NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-514

COMMONWEALTH

vs.

DAVID YARDE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In December 2012, the defendant was indicted for murder in the first degree in the shooting death of Deandre Russ.  A jury found him guilty of the lesser included offense of murder in the second degree as well as illegal possession of a firearm.  The defendant appeals from his convictions and from the orders denying his two motions for a new trial.[1]  We affirm.

Background.  We briefly summarize the facts as the jury could have found them, reserving certain details for later discussion.  In the early morning hours of October 28, 2012, the

_____

[1] The appeal from at least one of the orders denying the two motions for a new trial was consolidated with the direct appeal. For the purposes of our review, we assume both denials are before us.

defendant, Calvin Miranda, John Collins, and Victor Lewis attended a party at an apartment on Tremont Street. The victim was also at the party. In the elevator, after leaving the party, the victim asked the others in the elevator, which included the defendant, where they were from. The defendant told the victim he was from "nowhere" and "Blue Hill Ave." The victim responded, "get out of here with that Blue Hill Ave. stuff." Once outside of the building, the victim stated, "Mission, Bitch," which Lewis interpreted as meaning the victim was from the Mission Hill area. Video footage from cameras mounted outside the apartment building showed the defendant, Miranda, Collins, Lewis, and the victim just before the victim was shot and killed.

The footage, which has no audio, shows the defendant, wearing a white or beige hat standing in front of the victim and to the right of a large pillar. At the same moment, the footage shows the shoe and shadow of Collins, who was wearing a Dallas Cowboys hat, just sticking out from behind the pillar. The footage then blurs as the camera pans away. When the camera pans back seconds later, the victim can be seen lying on the ground. Another camera captures the defendant, Collins, and Lewis running away from the victim moments after he falls to the ground. The defendant appears to have an object in his right hand by his side as he runs.

2

The victim was shot three times, including a fatal shot to his head.  Six shell casings were recovered from the scene.

The defendant was arrested three weeks later at Collins's residence.  A search of Collins's bedroom revealed ammunition from the same manufacturers as those recovered at the scene.

At trial, the defendant presented one witness, Delando Hawthorne, who saw the shooting from across the street. Hawthorne stated that the shooter was wearing a "dark-colored" hat.

Discussion.  1.  Motions for new trial.[2]  In his first motion for a new trial, the defendant argued that his trial counsel was ineffective for not offering expert testimony. Specifically, he claimed his counsel should have retained an expert pathologist to testify that the trajectory of the bullet that killed the victim could not have been fired from where the defendant was standing and that his counsel failed to adequately cross-examine the Commonwealth's medical examiner on this point. The defendant also argued that his counsel should have hired an expert to review the video footage evidence.  In support, the

_____

[2] To the extent the defendant attempts to challenge the sufficiency of the evidence presented at trial, his claim does not rise to the level of appellate argument.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). Nonetheless, his argument fails where, as the judge concluded in his decision on the first motion for a new trial, the video footage evidence "provides graphic evidence sufficient for a jury to reach the guilty verdicts that it returned."

3

defendant submitted affidavits and reports from forensic pathologist Dr. Elizabeth Laposata and forensic visual media expert Michael Garneau.  The defendant did not provide an affidavit from trial counsel.

We review a judge's decision on a motion for a new trial for an abuse of discretion, meaning that we determine whether their "decision resulted from 'a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives.'" Commonwealth v. Jacobs, 488 Mass. 597, 600 (2021), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  "Where, as here, the motion judge [was] also the trial judge, we give 'special deference' to the judge's findings of fact and the ultimate decision on the motion" (citation omitted). Commonwealth v. Kolenovic, 471 Mass. 664, 672-673 (2015), S.C., 478 Mass. 189 (2017).

In a motion for a new trial based on ineffective assistance of counsel, the defendant must show that the behavior of counsel fell "below that . . . [of] an ordinary fallible lawyer" and that such failing "likely deprived [him] of an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  "Where, as here, the defendant's ineffective assistance of counsel claim is based on a tactical or strategic decision, the test is whether the

4

decision was manifestly unreasonable when made" (quotation and citation omitted). Kolenovic, 471 Mass. at 674.

As the judge noted in his decision denying the defendant's motion, Dr. Laposata's conclusions were largely consistent with the testimony of the Commonwealth's medical examiner, Dr. Kimberly Springer. Both agreed on the entrance and exit wounds with respect to the bullet that killed the victim. Dr. Laposata's conclusion that the trajectory of the fatal bullet was "a pathway nearly horizontal" was "completely consistent" with Dr. Springer's testimony as well as the autopsy photographs and anatomical chart she prepared. Both experts also agreed that there was stippling to the victim's face, meaning that the gun was fired from an intermediate distance. Accordingly, because Dr. Laposata would not have provided evidence meaningfully undermining the Commonwealth's case on these points, the defendant could not show that such an omission likely deprived him of a substantial ground of defense. See Saferian, 366 Mass. at 96. See also Jacobs, 488 Mass. at 602 ("defense counsel's decision not to introduce cumulative testimony does not rise to the level of ineffective assistance of counsel").

As for Dr. Laposata's additional conclusion that the defendant could not have been the shooter based on his and the victim's positions (in the one to two seconds not caught on

5

camera), the judge did not abuse his discretion in concluding that that opinion falls outside of Dr. Laposata's expertise as a forensic pathologist. Given that the defendant cannot show that Dr. Laposata's opinion would have been admissible, counsel's failure to present it neither fell below professional norms nor deprived the defendant of a substantial ground of defense. See Saferian, 366 Mass. at 96. Cf. Commonwealth v. Comita, 441 Mass. 86, 91 (2004) (defendant cannot prevail on claim of ineffective assistance for failure to file motion to suppress where he cannot demonstrate likelihood that motion would have been successful).

Similarly, we agree with the judge's conclusion that counsel's decision not to cross-examine Dr. Springer on issues related to Dr. Laposata's findings did not constitute ineffective assistance. Again, the relevant and admissible points made by Dr. Laposata were largely consistent with Dr. Springer's testimony and would not have undermined her conclusions. Further, as the judge stated in his denial, "[a] decision not to prolong [Dr. Springer's] testimony and provide additional opportunity to view [graphic] evidence concerning the victim's wounds" was a strategic one that was not manifestly unreasonable. See Kolenovic, 471 Mass. at 674.

We also agree with the judge's conclusion that counsel's decision not to call a visual media forensic expert did not

6

constitute ineffective assistance.  Mr. Garneau's report did not add anything material to the visual evidence presented at trial.  Many of his conclusions such as when the shooting occurred are evident from the video recordings themselves and undisputed.  As the judge concluded, Mr. Garneau's statement that the location of "individual # 2" (Collins) before the shooting "is not based on any additional visualization techniques, but rather mimics the same argument made by trial counsel in reliance on the shadow and shoe apparent in this final frame [of the footage]."  Thus, none of Mr. Garneau's opinions supply any evidence that was not already before the jury.  Accordingly, defense counsel did not deprive the defendant of a substantial ground of defense.  See Saferian, 366 Mass. at 96.

In his second motion for a new trial, the defendant argued that his postconviction counsel, who filed his first motion for a new trial, was also ineffective.  On appeal, the defendant has presented no argument as to why the denial of his second motion for a new trial was erroneous.  Accordingly, his claim fails to reach the level of appellate argument.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).[3]

_____

[3] Moreover, the defendant has failed to include either of his motions for a new trial, the decisions related to those motions, or the transcript of the evidentiary hearing related to his second motion for a new trial.  Although the defendant is self-represented, he is bound by the same rules as parties who are represented by counsel.  See Commonwealth v. Jackson, 419

7

2. _Disclosure of evidence_. The defendant argues that the Commonwealth failed to disclose certain exculpatory evidence. Specifically, he points to evidence that the victim possessed a firearm at the time of his death and that ammunition was found at Collins's home following the shooting. There is no merit to the defendant's claims. Not only did both of these facts come out at trial, but the record shows that they were disclosed to counsel in discovery well before trial. The defendant also complains about the "suppression of key eyewitness testimony." While he does not name the eyewitness or make any citations to the record, he paraphrases the testimony of Hawthorne, who claimed that the man he saw shoot the victim had a "dark-colored" hat, not a "white" one. Clearly this evidence, along with defense counsel's argument suggesting Collins was the shooter, was before the jury.

3. _Closing argument_. With no citation to the record, the defendant claims that the Commonwealth made an improper, speculative argument that the defendant disposed of the murder weapon. Based on our review of the transcripts, it does not appear that the Commonwealth made any mention of the defendant's alleged disposal of the murder weapon.

_____

Mass. 716, 719 & n.3 (1995). It is the defendant's responsibility to include in an appendix the materials necessary to permit our review. See Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019).

8

The Commonwealth did argue in closing that the video footage showing the moments after the shooting depicts the defendant "tucking" the murder weapon into his waistband as he runs behind Collins and Lewis.  "Where, as here, there was no objection to the challenged statements at trial, we review to determine whether there was error and, if so, whether it created a substantial risk of a miscarriage of justice."  Commonwealth v. Cuffee, 492 Mass. 25, 32 (2023).  We also note that the lack of objection "is some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial" (citation omitted).  Commonwealth v. Beland, 436 Mass. 273, 289 (2002).

While a prosecutor may not misstate the evidence, she "may . . . in closing argument[] analyze the evidence and suggest what reasonable inferences the jury should draw from that evidence" (citation omitted).  Commonwealth v. Goddard, 476 Mass. 443, 449 (2017).  "The inference 'need not be necessary and inescapable, only reasonable and possible'" (citation omitted).  Id.

The prosecutor's argument that the defendant had a weapon in his hand that he tucked into his waistband as he ran away from the scene is a fair and reasonable inference drawn from the video footage exhibits.  The prosecutor asked the jury to "watch [the video recordings] frame by frame," and "[l]ook at [the

9

defendant's] right hand.  Contrast it, compare it to how Victor Lewis and John Collins are running . . . in a natural, free stride . . . and [then] there's the defendant."  Thus, the prosecutor took evidence before the jury and "suggest[ed] what reasonable inferences the jury should draw from that evidence" (citation omitted).  Goddard, 476 Mass. at 449.  The judge also instructed the jury multiple times that closing arguments are not evidence..  See Commonwealth v. Hernandez, 473 Mass. 379, 392 (2015) (jury presumed to follow instructions).  Accordingly, there was no error and no substantial risk of a miscarriage of justice.

4.  Juror issues.  The defendant challenges the impartiality of the jury and claims they were subject to extraneous influence.  His arguments, which are conclusory and do not include any record citations, do not rise to the level of appellate argument.  See Mass. R. A. P. 16 (a) (9) (A).

At oral argument, the Commonwealth did provide some context for the defendant's allegation that during deliberations, a juror was approached on a train by a family member of the victim and "demanded a guilty verdict."  During deliberations, the judge conducted a voir dire of the juror in which the juror disclosed that on the previous day, he had seen members of the trial audience on his train and that one had stated, loud enough for the juror to hear, "[H]e's guilty."  The juror said that due

10

to the incident, he "didn't sleep last night."  The judge then asked the juror if the situation would "in any way affect [his] ability to be a completely fair and unbiased juror without any prejudice."  The juror asserted, "No," and stated that he had not spoken to anyone else about the incident.  After confirming that neither the Commonwealth nor the defendant had any concerns, the judge concluded that the juror "will continue to be a fair and unbiased juror," and let the deliberations continue.

"A reviewing court 'will not disturb a judge's findings of impartiality,' or a judge's finding that a juror is unbiased, 'absent a clear showing of an abuse of discretion or that the finding was clearly erroneous'" (citation omitted).  Commonwealth v. Colon, 482 Mass. 162, 168 (2019).  Here, where the judge promptly held a voir dire after the juror let a court officer know of the incident, and thoroughly questioned him, and where the juror asserted he could remain unbiased, we can discern no clearly erroneous finding or abuse of discretion in the judge's decision.

5.  Cumulative effect of alleged errors.  Lastly, the defendant argues that the totality of the alleged errors poses a

11

substantial risk of a miscarriage of justice.  Given our conclusions herein, the defendant's claim must fail.[4]

Judgments affirmed.

Order dated January 8, 2020, denying first motion for new trial affirmed.

Order dated July 7, 2023, denying second motion for new trial affirmed.

By the Court (Desmond, Tan & Wood, JJ.[5]),

Clerk

Entered:  July 14, 2026.

---

[4] Other arguments advanced by the defendant "but not discussed in this [decision], have not been overlooked.  We find nothing in them that requires discussion."  Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[5] The panelists are listed in order of seniority.